UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL,<br><br>      Plaintiff,<br><br>      v.<br><br>MICHAEL LEAVITT, et al.,<br><br>      Defendants. | Civil Action 04-01295 (HHK) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, the Natural Resource Defense Council ("NRDC"), brings this action for declaratory and injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. NRDC alleges that defendants, Michael Leavitt, Administrator of the United States Environmental Protection Agency (in his official capacity only) and the United States Environmental Protection Agency (collectively, "EPA"), have violated FOIA by failing to respond sufficiently to a request for documents concerning stockpiles of the pesticide methyl bromide. Before the court are EPA's "Motion to Dismiss, or in the Alternative, Summary Judgment" and "Supplemental Motion for Summary Judgment" as well as NRDC's "Cross-Motion for Summary Judgment." Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that NRDC's cross-motion (Dkt. #7) and EPA's supplemental motion (Dkt. #11) must be denied, and EPA's initial motion granted (Dkt. #6).

## I.  FACTUAL BACKGROUND

NRDC is a non-profit organization concerned with issues affecting the environment; among them is the preservation of the earth's protective ozone-layer. In furtherance of its goal, NRDC has "worked for more than 20 years to reduce and eliminate production and use of chemicals that destroy the ozone layer." Compl. ¶ 13. Specifically, NRDC has focused its attention on reducing the production and use of methyl bromide.

Methyl bromide is an odorless, colorless, toxic gas, used primarily as a fumigant intended to manage insect, rodent, weed, pathogen, and nematode populations. Methyl bromide is categorized as a Class I ozone depleting substance by the Clean Air Act ("CAA"), and in recognition of its damaging properties the CAA mandated that its consumption and production, with certain exceptions, be eliminated by January 1, 2005. *See* EPA Section 114 Information Request, 69 Fed. Reg. 52403 (Aug. 25, 2004).

In addition to regulation under the CAA, methyl bromide is also the subject of an international treaty to which the United States is a party—the Montreal Protocol on Substances that Deplete the Ozone Layer ("Montreal Protocol"), Sept. 16, 1987, 26 I.L.M. 1550. The CAA essentially implements the Montreal Protocol's directives, which also required that methyl

bromide use be phased out by January 1, 2005.[1]  The Montreal Protocol does, however, provide certain "critical use" exceptions that permit the chemical's continued utilization.

The signatories to the Montreal Protocol have agreed that the methyl bromide required for these "critical use" exceptions must be supplied through "existing stocks" of methyl bromide before new production is authorized.  In order to determine whether any new production is necessary, it is incumbent upon each member country to assess their respective inventory of methyl bromide.  EPA, under the information gathering powers authorized by the CAA, collected data from five companies as part of this assessment.  Among the information EPA requested was the amount of methyl bromide stockpiled or in the inventory of each company.  Compl. ¶ 2.  It is this information that is the subject of NRDC's information request.[2]

---

[1]      EPA has explained the relationship between the Montreal Protocol and the CAA, noting:

Section 604(d) states that "to the extent consistent with the Montreal Protocol," the Administrator may exempt methyl bromide for critical uses.  Section 614(b) states that Subchapter VI "shall be construed, interpreted, and applied as a supplement to the terms and conditions of the Montreal Protocol, as provided in Article 2, paragraph 11 thereof, and shall not be construed, interpreted, or applied to abrogate the responsibilities or obligations of the United States to implement fully the provisions of the Montreal Protocol.  In case of a conflict between any provision of this subchapter and any provision of the Montreal Protocol, the more stringent provision shall govern."

EPA Section 114 Information Request, 69 Fed. Reg. 52403 (Aug. 25, 2004).

[2]      Specifically, CRDC requested:

1.  All Section 114 information requests on methyl bromide stockpiles referred to in the letter to Rep. Joe Barton, Chairman, Subcommittee on Energy and Air Quality, House Committee on Energy and Commerce, from Dona DeLeon, EPA Acting Associate Administrator, February 10, 2004, including all such requests sent by EPA to entities involved in the production, consumption, and/or use of

EPA produced some documents in response to NRDC's FOIA request but withheld the production of additional documents. EPA's primary justification for its non-disclosure was that the information concerning individual companies' methyl bromide stockpiles was confidential business information, the disclosure of which would result in a competitive disadvantage to the respective companies. In addition, EPA also refused to produce aggregate stockpile data because, notwithstanding EPA's classification of this material as non-confidential business information, two companies had filed "reverse-FOIA" claims that disputed the information's classification.[3] In accordance with its interpretation of agency regulations, EPA refused to produce documents that were the subject of pending litigation.

NRDC objected to EPA's determinations and filed the instant action to seek judicial review of EPA's conclusions so as to obtain the release of three categories of information: (1)

---

methyl bromide, and including the names of those entities.
2. All responses to those Section 114 requests received by EPA from those queried entities.
3. All documents that identify the names of the queried entities and/or the entities that that [sic] responded to those Section 114 requests.
4. All documents that compile the total aggregate amount of methyl bromide stockpiles from the responses to those Section 114 requests.
5. All documents that analyze or estimate the percentage of total stockpiles held by all domestic entities that is represented by the responses to those Section 114 requests.

Pl.'s Mot. for Summ. J., Ex. 1.

[3]   The two "reverse-FOIA" actions are *Ameribrom v. Leavitt*, No. 04-04393, (filed Sept. 9, 2004 D.N.J.) and *Hendrix & Dail v. Leavitt*, No. 04-cv-134 (filed Sept. 14, 2004, E.D.N.C.).

company-specific stockpile data, (2) aggregate stockpile data, and (3) domestic stockpile estimates, a request to which NRDC believes EPA has neglected to respond.

## II. ANALYSIS

**A. Legal Framework**

Congress enacted FOIA to promote "a policy of broad disclosure of Government documents" and "ensure 'an informed citizenry, vital to the functioning of a democratic society.'" *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (internal citations omitted)). In so doing, however, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information." *Id.* In order to balance these competing interests, Congress crafted nine exemptions to FOIA under which an agency may withhold information. *See* 5 U.S.C. § 552(b)(1)–(9). EPA invokes Exemption 4, *see id.* at § 552(b)(4), as grounds for denying NRDC's request for information relating to methyl bromide stockpiles. It is the propriety of EPA's invocation of Exemption 4 that is the subject of the summary judgment motions before the court.[4]

---

[4] The law which governs is familiar. FOIA provides for *de novo* review by the district court, and places the burden on "the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The agency may meet this burden by submitting affidavits or declarations that describe the withheld material in reasonable detail and explain why it falls within the claimed FOIA exemptions. *See Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Where the pleadings and affidavits or declarations show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law, summary judgment is the appropriate mechanism for resolving FOIA disclosure disputes. *See* Fed. R. Civ. P. 56(c); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313–14 (D.C. Cir. 1988). In addition, a district court may determine if a FOIA exemption is properly invoked on the basis of affidavits or declarations submitted by the government, *see Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1979), so long as the affidavits are not conclusory and describe the

Under Exemption 4, an agency may withhold from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Under the law of this Circuit, information is "confidential" for purposes of Exemption 4 if it is "likely" to 1) "cause substantial harm to the competitive position of the person from whom the information was obtained"; or 2) "impair the government's ability to obtain necessary information in the future." *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974).

In addition, EPA also resists production of aggregate stockpile information pursuant to 40 C.F.R. § 2.205(f)(2), which states that entities will have 10 days from receipt of written notice of an EPA determination that documents should be released to contest an EPA decision. The regulation states further that:

> EPA will make the information available to the public on the tenth working day after the date of the business's receipt of the written notice . . ., unless the EPA legal office has first been notified of the business's commencement of an action in a Federal court to obtain judicial review of the determination, and to obtain preliminary injunctive relief against disclosure. [E]PA may nonetheless make the information available to the public (in the absence of an order by the court to the contrary), once the court has denied a motion for a preliminary injunction in the action or has otherwise upheld the EPA determination, or whenever it appears to the EPA legal office, after reasonable notice to the business, that the business is not taking appropriate measures to obtain a speedy resolution of the action.

40 C.F.R. § 2.205(f)(2).

---

justification for withholding the requested records "in sufficient detail to demonstrate that the claimed exemption applies." *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987).

**1. Company Specific Information**

EPA withheld production of the methyl bromide data collected from each of the five companies from which it sought and received information. EPA did so after it determined that such company-specific data qualified as confidential business information and was therefore exempted from production under FOIA.

NRDC contests this determination and argues that EPA is required to release all company-specific information because it is "emission data." Therefore, it is not eligible for confidential treatment.[5] *See* 42 U.S.C. § 7414(c); 40 C.F.R. § 2.301(e). Section 114 states in pertinent part:

> Any records, reports or information obtained under subsection (a) of this section shall be available to the public, except that upon a showing satisfactory to the Administrator by any person that records, reports, or information, or particular part thereof, (*other than emission data*) to which the Administrator has access under this section if made public, would divulge methods or processes entitled to protection as trade secrets of such person, the Administrator shall consider such record, report, or information or particular portion thereof confidential . . . .

---

[5] In the alternative, NRDC submits that the last clause of Section 114(c) of the CAA—which states that confidential information "may be disclosed . . . when relevant in any proceeding . . .," 42 U.S.C. § 7414(c)—also requires that the disputed documents be released. The court is unpersuaded by the merits of this argument. A plain reading of Section 114(c), as well as the corresponding regulations, indicates that EPA is provided the discretion to release confidential materials deemed to be relevant to a proceeding, but that it is in no way required to release any such materials. *See* 40 C.F.R. § 2.301(g) ("Under sections 114, 208 and 307 of the Act, any information to which this section applies may be released by EPA because of the relevance of the information to a proceeding, notwithstanding the fact that the information otherwise might be entitled to confidential treatment . . .").

42 U.S.C. § 7414(c) (emphasis added).  Thus, NRDC maintains that even if the company-specific stockpile information is confidential business information—a proposition that NRDC does not dispute—it should nevertheless be released given its status as "emissions data."

EPA's implementing regulations define "emissions data" as "information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of any emission which had been emitted by the source . . . ." 40 C.F.R. § 2.301(a)(2)(i)(A); *see also* 40 C.F.R. § 2.301(a)(2)(i)(B).[6]  According to NRDC, this definition encapsulates the requested information because future emissions of methyl bromide are "directly related" to the size of current methyl bromide stockpiles.  Pl.'s Cross-Mot. for Summ. J. at 5.

EPA counters by arguing that the connection between the methyl bromide stockpiles held by a select group of manufacturers is too attenuated to actual emissions to fall within the ambit of the aforementioned EPA regulations.  EPA notes that the focus of the regulations is on

---

[6]  40 C.F.R. § 2.301(a)(2)(i) states in its entirety:

"Emission data" means, with reference to any source of emission of any substance into the air—
(A) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of any emission which has been emitted by the source (or of any pollutant resulting from any emission by the source), or any combination of the foregoing;
(B) Information necessary to determine the identity, amount, frequency, concentration, or other characteristics (to the extent related to air quality) of the emissions which, under an applicable standard or limitation, the source was authorized to emit (including, to the extent necessary for such purposes, a description of the manner or rate of operation of the source); and
(C) A general description of the location and/or nature of the source to the extent necessary to identify the source and to distinguish it from other sources (including, to the extent necessary for such purposes, a description of the device, installation, or operation constituting the source).

information related to emissions that have been "emitted by the source" or that "the source was authorized to emit." *See* 40 C.F.R. § 2.301(a)(2)(i)(A)&(B). In this case, the five methyl bromide manufacturers are not directly responsible for any emissions; instead, it is the purchasers of methyl bromide that will create any eventual emissions.

EPA offers the more reasonable interpretation of the regulations. A plain reading of 40 C.F.R. § 2.301(a)(2)(i) indicates that "emissions data" is defined narrowly to focus on information obtained from *a source* of emissions, not a producer of materials that will later contribute to emissions. Nor is there any reason to believe that the stockpiles of methyl bromide held by five companies are "necessary to determine" the "amount, frequency, concentration, or other characteristics" of methyl bromide emissions. Other courts that have examined 40 C.F.R. § 2.301(a)(2)(i) or similar statutes have emphasized the importance of this requirement, *see R.S.R. Corp. v. E.P.A.*, 588 F. Supp. 1251, 1255 (N.D. Tex. 1984) (remanding case to EPA to determine if information was "necessary to determine" emissions); Ruling on Petroleum Information Requested to be Held as Confidential, Op. Alaska Att'y Gen. (1991), 1991 WL 541991 (construing similar statute and maintaining information's confidentiality after finding information was not "necessary" for emissions calculation). This court likewise believes that a strict interpretation of the "necessary to determine" requirement is warranted in order to ensure that the exception does not swallow the rule.

Accordingly, the court finds that the company-specific methyl bromide information is not "emissions data," and therefore may be deemed "confidential business information" and withheld from production.

**2. Aggregate Data**

NRDC also urges the court to address the merits of EPA's decision to withhold documents responsive to NRDC's request for aggregate methyl bromide stockpile information, essentially a compilation of the company-specific data. In order to decide this question, however, the court need not—as NRDC appears to insinuate—adjudicate whether or not aggregate stockpile data is in fact confidential business information.

EPA's justification for its refusal to produce aggregate stockpile information is not that the data falls within one of FOIA's exemptions. Indeed, EPA itself has found that the aggregate data does not qualify for an exemption. Instead, EPA has not produced the documents because the information is the subject of pending litigation and, according to EPA, EPA regulations therefore prohibit the release. *See* 40 C.F.R. § 2.205(f)(2). NRDC does not contest EPA's interpretation of the regulations but instead objects to the inequity of allowing a subsequently filed action to interfere with its right of access to the requested documents.

Notwithstanding NRDC's protestations to the contrary, the court sees no inequity in affording companies an opportunity to protect what they believe to be confidential information. NRDC argues that it would have been more efficient for the two companies to intervene in the instant action rather than proceed in two different district courts, yet it cites no authority to support the contention that they are required to do so.

NRDC does, however, rely heavily on *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375 (1980), for the proposition that this court should retain "jurisdiction" over the instant case despite the two "reverse FOIA" actions seeking to prevent disclosure of the documents at issue. NRDC's reliance is misplaced, however, as no one has contested the court's jurisdiction over this

matter. In *GTE*, the district court erred when it held that there was no "case or controversy" as required by Article III because—though the agency was bound by a preliminary injunction prohibiting disclosure issued in a separate "reverse FOIA" action—the agency and the requesters agreed that disclosure was appropriate. Here, the existence of a case or controversy is not at issue.

If anything, *GTE* supports EPA's position. The court there found that the agency had properly withheld disclosure, despite the agency's belief that the documents were not exempted from FOIA's reach, because the agency was complying with a court order that mandated non-disclosure pending the resolution of a "reverse FOIA" action. 445 U.S. at 386. Similarly, in the case at bar EPA has properly withheld production, despite its conclusion that the documents did not fall within Exemption 4, because it is complying with agency regulations that instruct EPA to await adjudication of the pending "reverse FOIA" actions. *See* 40 C.F.R. § 2.205(f)(2). The danger targeted by FOIA—namely the "unjustified suppression of information"—is not implicated because the agency has not *chosen* to withhold information, but instead has been instructed to do so. *See GTE*, 445 U.S. at 386 ("The concerns underlying the Freedom of Information Act are inapplicable, for the agency has made no effort to avoid disclosure; indeed, it is not the [agency's] decision to withhold the documents at all.").

Based on the foregoing analysis the court finds that EPA properly withheld the production of the aggregate stockpile data.

**3. Group Estimates**

The final category of information to which NRDC believes it is entitled to access is information responsive to its fifth FOIA request—"All documents that analyze or estimate the

percentage of total stockpiles held by all domestic entities that is represented by the responses to those Section 114 requests." Pl.'s Cross Mot. for Summ. J., Ex. 1.  NRDC initially argued that EPA had not responded at all to this request.  However, subsequent to the filing of NRDC's cross-motion for summary judgment, EPA identified three pages of responsive documents, but withheld these documents from production on the basis that the documents are subject to the deliberative process privilege set forth in FOIA Exemption 5, 5 U.S.C. § 552(b)(5).[7]  In addition, EPA asserts that the documents must be withheld in their entirety given that any responsive information is "inextricably intertwined with exempt portions."  Def.'s Suppl. Mot. for Summ. J. at 12.

In light of EPA's revised position, NRDC now requests that, at a minimum, the three documents at issue be subjected to an *in camera* inspection.  In particular, NRDC is unsatisfied that the level of detail provided by EPA supports its assertion that any responsive factual information is non-segregable.

NRDC's concern is not without some justification.  Indeed, the only evidence offered in support of EPA's non-segrability claim is a lone statement in a single affidavit.  *See* Decl. of Drusilla Hufford ¶ 13, Def.'s Suppl. Mot. for Summ. J., Ex. A ("There is no reasonably segregable information in this document that could be released without revealing protected pre-decisional and deliberative information at the expense of EPA's decision-making process.").  Though the court is unsure that EPA is capable of providing a substantially more detailed explanation without revealing the very information it wishes to keep concealed, given the very

---

[7] These three pages of documents are the subject of EPA's "Supplemental Motion for Summary Judgment" (Dkt. # 11).

small volume of documents at issue, the court finds that an *in camera* review of the documents would be the most efficient manner by which to resolve the dispute. *See, e.g.*, *Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (acknowledging number of documents as factor to be consider when contemplating *in camera* review); *Maynard v. CIA*, 986 F.2d 547, 558 (1st Cir. 1993) ("*In camera* review is particularly appropriate when the documents withheld are brief and limited in number."). While "an *in camera* review should not be resorted to as a matter of course,"*Quinon*, 86 F.3d at 1228, in this instance the court finds that the extremely limited number of documents and the factual nature of the dispute warrant such review.

Because EPA's "Supplemental Motion for Summary Judgment" is limited to these three one-page documents, and because there is a factual dispute as to whether or not these documents contain segregable information, the motion is denied.

### III.  CONCLUSION

For the aforementioned reasons, it is this 14th day of March, 2006, hereby

**ORDERED** that EPA's "Supplemental Motion for Summary Judgment" (Dkt. #11) is **DENIED**, and it is

**FURTHER ORDERED** that NRDC's "Cross-Motion for Summary Judgment" (Dkt. #7) is **DENIED**, and it is

**FURTHER ORDERED** that EPA's "Motion to Dismiss, or in the Alternative, for Summary Judgment" (Dkt. #6) is **GRANTED**, and it is

**FURTHER ORDERED** that EPA shall submit the three documents which it has withheld pursuant to FOIA Exemption 5 for an *in camera* inspection within 10 days of the docketing of this memorandum opinion and order.

                                                    Henry H. Kennedy, Jr.
                                                    United States District Judge